UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT JOHN PRESTON,

          Plaintiff,

    v.

RYAN BOYER, et al.,

          Defendants.

CASE NO. C16-1106-JCC-MAT

REPORT AND RECOMMEDNATION

      Robert John Preston, a state prisoner, is proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action against Snohomish County Sheriff's Deputy Ryan Boyer and Snohomish County Sheriff's Captain Jeffrey Miller.  Captain Miller has filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that plaintiff has failed to state a claim against him.  (Dkt. 34; *see also* Dkt. 39.)  Plaintiff opposes the motion. (Dkt. 38.)  Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that Captain Miller's motion be GRANTED.

## BACKGROUND

      Plaintiff alleges the following in his amended complaint.[1]  On July 30, 2014, at around

---

[1] Plaintiff makes additional allegations against Deputy Boyer that are not included here because they do not affect the disposition of Captain Miller's motion for judgment on the pleadings.

REPORT AND RECOMENDATION
PAGE - 1

1:00 p.m., Deputy Boyer encountered plaintiff at a park-and-ride in Everett, Washington.  (Dkt. 10 at 5.)  Deputy Boyer used force against plaintiff, eventually rendering him unconscious with a kick to his head.  (*Id.* at 5-7.)  After plaintiff "blacked out," he went into a seizure.  (*Id.* at 5, 9.)  Captain Miller arrived at the scene to provide backup to Deputy Boyer.  (*Id.* at 10.)  Plaintiff does not remember Captain Miller's arrival because he was unconscious.  (*Id.*)  Therefore, the allegations in the amended complaint regarding Captain Miller are based on the Captain's police report, which plaintiff attached as an exhibit.  (*Id.*; *see also* Dkt. 10-1 at 12.)  As Captain Miller approached in his vehicle, he saw that Deputy Boyer was standing over plaintiff, who was lying on the ground.  (Dkt. 10-1 at 12.)  Deputy Boyer had deployed his Taser and was holding it in his hands.  (*Id.*)  As Captain Miller drove closer, he observed plaintiff rolling from back to front and flailing his arms.  (Dkt. 10 at 10; Dkt. 10-1 at 12.)  Plaintiff claims he was moving because he was having a seizure.  (Dkt. 10 at 10.)  From his vehicle, Captain Miller saw Deputy Boyer give verbal commands that plaintiff did not obey and then kick plaintiff twice on the side of his body.  (Dkt. 10 at 10; Dkt. 10-1 at 12.)  Captain Miller then exited his car and assisted Deputy Boyer by holding plaintiff's legs.  (Dkt. 10 at 10; Dkt. 10-1 at 12.)  Captain Miller told plaintiff several times to lie on his stomach and place his hands behind his back.  (Dkt. 10-1 at 12.)  Plaintiff slowly complied with Captain Miller's instructions, and Deputy Boyer applied handcuffs.  (Dkt. 10 at 10; Dkt. 10-1 at 12.)  After the scene was secured and aid was summoned, Captain Miller departed.  (Dkt. 10-1 at 12.)

Paramedics arrived at the scene and took plaintiff to Providence Hospital in Everett, where he was admitted into the intensive care unit.  (Dkt. 10 at 5, 7.)  Plaintiff was unconscious for over a day and was discharged on August 5, 2014.  (*Id.* at 5, 7-8.)

Since the incident, plaintiff has had blood clots, partial vision loss, knee problems,

REPORT AND RECOMENDATION
PAGE - 2

permanent facial scarring, bad dreams, and "major paranoid effects when people are behind" him. (*Id.* at 5, 13.)  He has $70,000.00 in outstanding medical bills and will need oral surgery to fix his broken tooth.  (*Id.* at 5, 13.)

Plaintiff claims Captain Miller violated his Fourth, Fifth, Eighth, and Fourteenth Amendment constitutional rights when he failed to stop Deputy Boyer's assault.  (*Id.* at 5.)  He seeks compensatory and punitive damages.  (*Id.* at 4.)

<u>DISCUSSION</u>

A.    <u>Legal standard for Rule 12(c) motions</u>

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  When deciding a Rule 12(c) motion, the Court applies the same standard of review applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) ("Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog.").  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if the plaintiff has alleged "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The factual allegations must be "enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

When considering a Rule 12(b)(6) motion, the Court "may consider only the pleadings, documents attached to or incorporated by reference in the pleadings, and matters of judicial

REPORT AND RECOMENDATION
PAGE - 3

notice." *Holy Ghost Revival Ministries v. City of Marysville*, 98 F. Supp. 3d 1153, 1162 (W.D. Wash. 2015) (citing *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)).  The Court accepts all facts alleged in the complaint as true, and liberally construes a *pro se* complaint in the light most favorable to the plaintiff.  *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*pro se* plaintiffs are held to less stringent pleading standards than represented plaintiffs).  The Court is not, however, bound to accept as true labels, conclusions, formulaic recitations of the elements, or legal conclusions couched as factual allegations.  *Twombly*, 550 U.S. at 555.  The complaint may be dismissed if it lacks a cognizable legal theory or states insufficient facts to support a cognizable legal theory.  *Zixiang v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013).

If a complaint fails to state a claim upon which relief may be granted, the Court may (1) grant the non-moving party leave to amend, (2) dismiss one or more individual causes of action, or (3) enter judgment.  *E.g.*, *Sprint Telephony PCS, L.P. v. Cnty. of San Diego*, 311 F. Supp. 2d 898, 902-03 (S.D. Cal. 2004), *clarified in nonpertinent part*, 2004 WL 85933 (S.D. Cal. Jan. 23, 2004); *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004).  Leave to amend should be granted unless it is clear the complaint cannot be saved by amendment.  *Jackson v. Barnes*, 749 F.3d 755, 766-67 (9th Cir. 2014) (district court erred in granting judgment on the pleadings and not permitting amendment where it was not absolutely clear the deficiencies were not curable); *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (district court erred in granting motion for judgment on the pleadings without giving leave to amend).

B.    Legal standard for § 1983 claims

To sustain a § 1983 civil rights claim, plaintiff must show (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was

proximately caused by a person acting under color of state or federal law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  To satisfy the second prong, plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint.  *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).  A plaintiff may not hold supervisory personnel liable under § 1983 for constitutional deprivations under a theory of *respondeat superior*.  *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

C.    Fourth Amendment claims

       1.    *Excessive force*

       Captain Miller argues that the allegations against him fail to state a claim that he used excessive force against plaintiff.[2]  (Dkt. 34 at 9-10.)  A claim that an officer used excessive force before or during an arrest is analyzed under the Fourth Amendment's "reasonableness" standard.  *Smith v. City of Hemet*, 394 F.3d 689, 700 (9th Cir. 2005) (en banc) (citing *Graham v. Connor*, 490 U.S. 386 (1989)).  "[T]he 'reasonableness' inquiry in an excessive force case is an objective one:  the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Graham*, 490 U.S. at 397.  The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision in hindsight.  *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001) (citing *Graham*, 490 U.S. at 396).

       To determine whether an officer used excessive force, the nature and quality of the

_____

[2] Based on the allegations in plaintiff's amended complaint and plaintiff's response to Captain Miller's motion for judgment on the pleadings, it does not appear that plaintiff seeks to bring an excessive force claim against Captain Miller based on his own actions.  (*See* Dkts. 10 & 38.)  Rather, the focus of plaintiff's allegations is on Captain Miller's failure to stop Deputy Boyer's use of force and Captain Miller's allegedly false statement that plaintiff was able to respond to verbal commands to place his hands behind his back.  (*See* Dkt. 38.)  The Court, nevertheless, will consider Captain Miller's argument.

REPORT AND RECOMENDATION
PAGE - 5

intrusion must be weighed against the countervailing governmental interest in the use of that force. *Id.* The balancing inquiry involves three steps. First, the Court must evaluate "the type and amount of force inflicted." *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010). Second, the Court considers the government's interest in using force, relying upon "(1) the severity of the crime, (2) whether the suspect posed an immediate threat to the officers' or public's safety, and (3) whether the suspect was resisting arrest or attempting to escape." *Id.* Having determined the force used and the government's interest in using force, the Court then "balance[s] the gravity of the intrusion on the individual against the government's need for that intrusion." *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003).

Captain Miller argues that his use of a control hold on plaintiff's legs does not constitute excessive force as a matter of law. (Dkt. 34 at 9.) As he points out, plaintiff does not have an independent recollection of his arrival at the scene or his use of force. (Dkt. 34 at 9 (citing Dkt. 10 at 5, 7, 10)); *see also* Dkt. 38 at 3 (plaintiff's admission in his response brief that he "doesn't remember when Captain Miller arrived . . . .").) Therefore, the allegations regarding Captain Miller come from his police report, which plaintiff attached to the amended complaint.[3] (*See* Dkt. 10-1 at 12.)

Viewing the allegations in the light most favorable to plaintiff, the Court concludes that he fails to state an excessive force claim against Captain Miller based on the Captain's use of a control hold. The only force Captain Miller allegedly used against plaintiff was to "place a control hold on his feet and legs," while Deputy Boyer handcuffed him. (Dkt. 10-1 at 12.) This appears to be a lower level use of force. Captain Miller used force only after being called to the

---

[3] Because plaintiff attached Captain Miller's police report to his amended complaint, the Court can consider it without converting Captain Miller's Rule 12(c) motion into one for summary judgment. *See Holy Ghost Revival Ministries*, 98 F. Supp. 3d at 1162 (citing *Ritchie*, 342 F.3d at 907).

scene to provide assistance and observing Deputy Boyer give verbal commands that plaintiff did not obey.  (*Id.*)  Even though plaintiff claims he was having a seizure and did not deliberately fail to obey, there is no allegation that Captain Miller knew plaintiff was having a seizure.  Balancing the gravity of the intrusion against the government's need to use force, the Court concludes that Captain Miller's alleged actions were objectively reasonable when viewed from the perspective of a reasonable officer on the scene.  Accordingly, to the extent plaintiff seeks to bring an excessive force claim based on Captain Miller's use of the control hold, it should be dismissed.

### 2. *Supervisor liability*

Captain Miller argues that he cannot be held liable for Deputy Boyer's alleged excessive force under a theory of supervisor liability.  (Dkt. 34 at 10-12.)  Captain Miller correctly asserts that *respondeat superior* liability is unavailable under § 1983.  *E.g.*, *Iqbal*, 556 U.S. at 676; *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) ("Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability.").  Rather, "[a] supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Crowley*, 734 F.3d at 977 (internal citation and quotation omitted); *see also Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).  As discussed above, the facts alleged do not establish that Captain Miller used excessive force against plaintiff.  Therefore, he may be liable as Deputy Boyer's supervisor only if there is a sufficient causal connection between his alleged wrongful conduct and Deputy Boyer's alleged excessive force.

"The requisite causal connection can be established . . . by setting in motion a series of action by others, [. . .] or by knowingly refus[ing] to terminate a series of acts by others, which

[the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207-08 (internal citation and quotation marks omitted, first brackets added, remaining brackets in original).   Plaintiff fails to sufficiently allege causation.   There is no allegation that Captain Miller set in motion any use of force by Deputy Boyer.   Likewise, there is no allegation that Captain Miller knowingly refused to terminate Deputy Boyer's use of force.   Indeed, Deputy Boyer's alleged use of force occurred *before* Captain Miller exited his vehicle.   (*See* Dkt. 10-1 at 12.)   Thus, plaintiff fails to state a claim against Captain Miller based on a theory of supervisory liability, and this claim should be dismissed.

>        3.      *Duty to intervene*

Captain Miller contends that plaintiff fails to allege facts that would support liability for failing to intervene when he witnessed Deputy Boyer's use of force.   (Dkt. 34 at 10; Dkt. 39 at 2-3.)   For purposes of ruling on the instant motion, the Court assumes without deciding that Deputy Boyer's use of force was unconstitutional.

"[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (quoting *United States v. Koon*, 34 F.3d 1416, 1447 n. 25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996)).   An officer, however, is liable for a breach of this duty only if he had "a realistic opportunity" to intercede.   *Id.*   Cases addressing whether an officer had a realistic opportunity to intercede focus on the timing of events and the distance between the officer and plaintiff at the time the constitutional violation occurred.   For example, if officers are not present at the time of a constitutional violation, they have no realistic opportunity to intercede.   *Id.* at 1290 (officers who were not present when force was used had no realistic

opportunity to intercede).  Likewise, if a constitutional violation occurs too quickly, there may be no realistic opportunity to intercede to prevent the violation.  *See, e.g.*, *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1159-60 (N.D. Cal. 2009) (officers did not have realistic opportunity to intercede when, although they were in the "immediate presence" of the events, the constitutional violation by a fellow officer occurred so quickly they did not have the opportunity to anticipate it).

Plaintiff alleges that Captain Miller arrived on the scene in time to see Deputy Boyer stand over plaintiff with his Taser deployed and then kick plaintiff twice in the side after plaintiff failed to comply with his verbal commands.[4]  (Dkt. 10-1 at 12.)  Captain Miller, however, was in his vehicle during these events.  Plaintiff does not allege that Deputy Boyer used excessive force after Captain Miller exited his vehicle.  Because plaintiff claims that Captain Miller was either en route to the scene or in his vehicle when Deputy Boyer allegedly used excessive force, plaintiff's allegations do not support a reasonable inference that Captain Miller had a realistic opportunity to intercede.

Plaintiff argues that "Captain Miller could [have] limited Deputy Boyer's actions that were witnessed and done in his presence."  (Dkt. 38 at 7; *see also id.* at 5.)  But the alleged facts do not support this claim.  *See Seven Arts Filmed Entertainment Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences") (quoted source omitted).  Plaintiff also contends that there is no evidence Captain Miller attempted to stop Deputy Boyer's assault and that Captain Miller fails to explain why he could not stop the use of

---

[4] As noted above, plaintiff alleges that he was unconscious and having a seizure at this point, but there is no allegation that Captain Miller knew this was the case.

REPORT AND RECOMENDATION
PAGE - 9

1    force he observed.  (Dkt. 38 at 3, 7.)  It is plaintiff's burden, however, to allege facts supporting a

2    plausible claim for relief, in this case, that Captain Miller had a realistic opportunity to intercede.

3    Because plaintiff has not met this burden, Captain Miller need not offer further explanation.

4    Plaintiff's failure to intervene claim against Captain Miller should be dismissed.

5               4.    *Leave to amend*

6          As just discussed, plaintiff fails to state a Fourth Amendment claim against Captain

7    Miller.  Given the record before the Court and plaintiff's concession that he does not have an

8    independent recollection of Captain Miller's involvement, it appears unlikely that he could allege

9    additional facts that would support a viable Fourth Amendment claim against the Captain.  If,

10   however, plaintiff has additional facts that he believes support a Fourth Amendment claim

11   against Captain Miller—bearing in mind that conclusory allegations, unwarranted deductions of

12   fact, and unreasonable inferences are insufficient—he should present them in objections to this

13   Report and Recommendation.  Otherwise, his Fourth Amendment claims against Captain Miller

14   should be dismissed with prejudice and without leave to amend.

15   D.    Eighth and Fourteenth Amendment claims

16         Plaintiff asserts claims against Captain Miller under the Eighth and Fourteenth

17   Amendments.  As Captain Miller argues, however, these claims must be dismissed.  The

18   Supreme Court has made clear that claims of excessive force during an arrest, investigatory stop,

19   or other seizure of a free person must be brought under the Fourth Amendment.  *Graham*, 490

20   U.S. at 388, 394-95 ("[A]ll claims that law enforcement officers have used excessive force—

21   deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen

22   should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than

23   under a 'substantive due process' approach.").  The Fourteenth Amendment due process clause

1    governs excessive force claims brought by pretrial detainees. *Id.* at 395 n. 10; *Bell v. Wolfish*,

2    441 U.S. 520, 535-39 (1979).  After conviction, the Eighth Amendment protects prisoners from

3    the use of excessive force. *Whitley v. Albers*, 475 U.S. 312, 318-19 (1986); *Graham*, 490 U.S. at

4    394; *see also Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002).  Because plaintiff alleges

5    excessive force in the course of an arrest, his claims arise under the Fourth Amendment. *See*

6    *Norse v. City of Santa Cruz*, 629 F.3d 966, 978 (9th Cir. 2010) ("An excessive-force claim that

7    arises in the context of an arrest is properly characterized as one invoking the protections of the

8    Fourth Amendment.").  His Eighth and Fourteenth Amendment claims should be dismissed with

9    prejudice and, because amendment would be futile, without leave to amend.

10   E.    Alleged falsification of police report

11       Plaintiff's amended complaint alleges that Captain Miller falsely stated in his police

12   report that he helped Deputy Boyer handcuff plaintiff at 1:06 p.m. (Dkt. 10 at 10.)  Plaintiff

13   bases his allegation on Deputy L.M. Zelaya's report, which he claims also gave a time of 1:06

14   p.m., but did not mention Captain Miller being involved. (*Id.*)

15       Captain Miller argues that plaintiff provides no valid basis upon which to believe his

16   report is not accurate. (Dkt. 39 at 3 n. 1.)  The Court agrees that plaintiff's false police report

17   claim is based on mere speculation.  Both Captain Miller's and Deputy Zelaya's reports give

18   "approximately 1306 hours" as the time they received Deputy Boyer's call for assistance. (Dkt.

19   10-1 at 11-12.)  Deputy Zelaya's report states that he arrived at the scene at "approximately 1308

20   hours," while Captain Miller's report does not indicate his arrival time. (*Id.*)  Captain Miller's

21   report states that he helped Deputy Boyer handcuff plaintiff, and Deputy Zelaya's report states

22   that he "saw Deputy Boyer holding [plaintiff] against the ground." (*Id.*)  There is no

23   inconsistency between the reports and thus no basis for an allegation that Captain Miller lied.

REPORT AND RECOMENDATION
PAGE - 11

1    In response to Captain Miller's motion for judgment on the pleadings, plaintiff claims

2    Captain Miller's police report contains additional false statements.  First, he asserts that Captain

3    Miller lied when he claimed that plaintiff responded to his verbal commands during handcuffing.

4    (Dkt. 38 at 3, 7.)  Plaintiff claims that Captain Miller's report is inconsistent with other officers'

5    reports, which did not state plaintiff was conscious.  (*Id.*)  But this claim is contradicted by the

6    record, which includes Deputy Zelaya's report that states:  "I saw [plaintiff] was in and out of

7    consciousness."  (Dkt. 10-1 at 11.)  Second, plaintiff alleges that Captain Miller "only wrote

8    things [in his report] to help his out of control Deputy so they could explain these injuries."

9    (Dkt. 38 at 4.)  This claim, however, is unsupported by any facts and thus appears to be mere

10   speculation.  Finally, plaintiff complains that Captain Miller's report did not "tell the truth" that

11   after the incident plaintiff was unconscious and needed to be placed on life support.  (*Id.* at 7.)

12   Yet any omission in Captain Miller's police report regarding the extent of plaintiff's injuries

13   does not establish that he falsified his report.  Plaintiff fails to state a viable claim that Captain

14   Miller's police reports contains material falsifications.[5]  All § 1983 claims against Captain Miller

15   based on allegedly falsified police reports should be dismissed.  Because there is no suggestion

16   that plaintiff's allegations are based on anything more than speculation, leave to amend should

17   be denied unless plaintiff presents sufficient facts to state a claim in objections to this Report and

18   Recommendation.

19                                   <u>CONCLUSION</u>

20       Captain Miller's Rule 12(c) motion for judgment on the pleadings (Dkt. 34) should be

---

[5] "Falsified police reports are only actionable under § 1983 if those reports result in the deprivation of life, liberty or property."  *Comfort v. Town of Pittsfield*, 924 F. Supp. 1219, 1230 (D. Me. 1996) (citing *Landrigan v. City of Warwick*, 628 F.2d 736, 744-45 (1st Cir. 1980)); *see also Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012) (collecting cases).  "[T]he mere filing of the false police reports, by themselves and without more, did not create a right of action in damages under 42 U.S.C. § 1983."  *Landrigan*, 628 F.2d at 744-45.

REPORT AND RECOMENDATION
PAGE - 12

GRANTED.  All claims against Captain Miller should be dismissed with prejudice and without leave to amend unless plaintiff objects to this Report and Recommendation and presents sufficient facts to state a claim.   A proposed Order accompanies this Report and Recommendation.

<u>DEADLINE FOR OBJECTIONS</u>

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.   Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **<u>February 10, 2017</u>**.

DATED this <u>13th</u> day of January, 2017.


Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMENDATION
PAGE - 13